under Rule X 10b-5. It is held, therefore, that §2305.09 **R. C.,** applies and bars plaintiffs from maintaining this action.

The pleadings, affidavits, exhibits and admissions in the record show there is no genuine issue as to a material fact. Therefore, and for the reasons hereinabove stated, defendants' motion for summary judgment is granted.

**WEIDNER, Plaintiff-Appellant, v. SCHOTTENSTEIN et, Defendants-Appellees.**

Ohio Appeals, Tenth District, Franklin County.

No. 6255.   Decided March 29, 1960.

Lane, Huggard & Alton, Jack R. Alton, of Counsel, Columbus, for plaintiff-appellant.

Vorys, Sater, Seymour & Pease, Byron E. Ford, of Counsel, Columbus, for defendants-appellees.

(MATTHEWS, PJ, O'CONNEL and LONG, JJ, of the First District, sitting by designation in the Tenth District.)

## OPINION

By MATTHEWS, PJ.

On or about January 7, 1957, the plaintiff and her husband rented an apartment from the defendant, and shortly thereafter moved into it and continued to occupy it at all times pertinent to this case. This apartment was one of ten situated on the southeast corner of Markison Avenue and South High Street in the City of Columbus.

The defendant had owned these apartments for more than thirty years and had operated them as a single unit under the dirrection of himself and an agent. To the rear of these apartments and separated by a rather narrow yard were ten stalls or garages for the use of the tenants of the apartments. These garages fronted on an alley leading to Markison Avenue. The yard between the apartments and the garages was not divided by any marks, indicating that any part was allocated to any specific apartment and there was one continuous concrete walk from one end of the apartments to the other, terminating at Markison Avenue. The apartments faced on South High Street.

For the use of the tenants, five excavations in duplicate were made, each of sufficient size to accommodate a garbage can of ordinary size. When properly placed in the excavation the top of these cans was below the level of the yard. These cans were covered by metallic lids, weighing about 30 pounds, having an aperture in the middle through which the householder could place the garbage in the can below. The lid covering this aperture, as originally constructed, was on a hinge. To remove the garbage can, it was necessary for the garbage collector to lift the entire covering which was metallic, constructed on a hinge, the fulcrum of which was imbedded in the concrete which surrounded the entire installation.

Leading from the concrete walk behind the apartments to these sunken garbage cans (which we have already said were constructed in pairs) was a single concrete walk to be used by the occupants of two apartments.

During the thirty years the metal covering and particularly the hinges had rusted, and the one on the cover behind the apartment next to that occupied by the plaintiff had been broken so that at the time plaintiff leased the apartment the entire cover could be removed, so as to leave the garbage can exposed in whole or in part. In other

words, the entire cover was not anchored in any way and according to defendants' agent could be kicked off the opening.

The trash cans were assembled at the north end of the row of garages. To reach these cans from the plaintiff's apartment it was necessary either to make a circuitous trip around the south end of the garage, or go north on the concrete walk behind the apartment next to plaintiff's apartment, then use the concrete walk to the sunken garbage cans, and then a few feet to the trash cans. The latter course had been adopted by the five apartment dwellers nearest the northern end, long before the plaintiff became a tenant, with the consent and approval of the defendants. And the plaintiff testified that at the time she leased the apartment the defendants' agent told her that was the way to reach the trash cans and also the garage which was assigned to her.

In her amended petition, the plaintiff alleges that on or about the 28th of February, 1957, she was a tenant in one of these apartments, and that on said date at about eleven o'clock, P. M., she and her husband had parked their automobile in the garage in the rear of 1510 South High Street (which was one of said apartments owned by defendant) and were walking from said garage toward their apartment on the path furnished by the defendants for tenants to use when she stepped with her right foot on a metal object placed there by the defendant as a cover for an underground garbage receptacle, and that said metal cover was loose and unstable and gave way, causing plaintiff's right foot and leg to go down into said underground garbage receptacle causing injuries which she later detailed.

The plaintiff alleges two acts of negligence of the defendants: (1) In failing to fasten said metal cover over said underground receptacle; and (2) In failing to warn the plaintiff that the cover was loose and would give way.

The defendants answered admitting their ownership and denied all else.

At the trial many details were introduced in evidence but we believe we have already set forth the ultimate facts, upon some of which the evidence was conflicting.

At the conclusion of the plaintiff's evidence, the defendants moved for an instructed verdict, which the Court sustained and entered judgment for the defendants. Later, a motion for a new trial was overruled. This appeal is from that judgment.

The defendants were represented by Charles T. Hirsch at the conference at which the plaintiff rented the apartment. The plaintiff testified that "Mr. Hirsch told me that the cans on the North side of the apartments or garages belonged to the first five units on the north and he said we could use the path to go out to the garage and empty our trash around the garage there." She also testified that he showed her the path and that her apartment was the most southerly of the five northern units. Further, she testified that all the tenants in the most northern apartments, except the most northern one, used this same way to reach their garages and that because their automobile was too large for the garage they were unable to use any other way except at great inconvenience.

There was other testimony by other witnesses that corroborated the plaintiff and the whole plan of the space between the row of apartments and the row of garages tends to indicate that the space was retained under the control of the defendants and was their responsibility to see that it was kept in reasonably safe condition for use in the way intended. There was no visible partition.

Now whether the defendants had the right to authorize the plaintiff to use the path in going to and from the garage and trash can would seem to be immaterial, although in the absence of evidence of the terms of the lease, it would seem that as owners they had the right and power. There is evidence that they did so authorize plaintiff and that she relied upon it. They were the owners of the fee simple title and certainly are estopped. As is said in 38 Am. Jur. 754, the general rule is: "That one who assumes to be the owner of real property, and, who, as such assumes to control and manage it, cannot by want of title in himself, escape liability for injuries resulting from defective condition."

And at page 762 of the same volume it is said: "The rule which imposes upon an owner or occupant of lands or buildings the duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils has been applied very frequently in the case of injuries from unprotected stairways _____ excavations and collapsing buildings."

But it is said that the place where this incident occurred was in the exclusive possession and control of another tenant. It is true that the evidence placed the plaintiff's one foot on the defective cover to the garbage can designed primarily for another tenant, but the evidence is in dispute as to whether the accident did not occur in the way to the trash cans and the garage designated by defendants' agent at the time of the leasing. Assuming, however, that the plaintiff had trespassed a few inches, that fact would not necessarily bar recovery. These marginal hazards usually relate to accidents on the boundaries of highways, but we believe the principle is general.

In 25 Am. Jur., at 814, it is said: "As a general rule, the duty of a municipal or quasi-municipal corporation or of a private individual to guard excavations or other dangerous places or hazards and the resulting liability for failure to do so exist only when such places are substantially adjoining the way, or in such close proximity thereto to be dangerous, under ordinary circumstances, to travelers thereon who are using ordinary care, * * *"

In re Am. Jur., 553, the rule is laid down that: "If the landlord creates or maintains a nuisance on premises not included in the lease, and within his control, he is liable for all injuries thereby caused to the tenant and to persons on the demised premises in the right of the tenant."

In re Corpus Juris Secundum, 93, it is said: "Although a landlord is not under obligation to repair the demised premises, he will be liable to the tenant for damages to the demised property occasioned by his negligent use of adjoining premises owned by him, and if he so uses the adjoining premises as to make the demised premises unsafe he will be under the duty to make such repairs as will protect them; * * *"

We are of the opinion that a condition such as the evidence discloses so near the way the defendants invited the plaintiff to use could be reasonably held to create a nuisance and render the path itself unsafe, and that physical harm might reasonably be anticipated therefrom.

On the whole record, we are of the opinion that issues of fact as to the negligence of the defendants and contributory negligence of the plaintiff were presented, upon which reasonable minds could reasonably differ, and, therefore, the Court erred in sustaining the defendants' motion for an instructed verdict.

The plaintiff placed defendants' agent on the witness stand under the provisions of §2317.52 R. C., for purpose of cross-examination. The defendants were permitted to examine him ostensibly as upon cross-examination. This is assigned as error.

It is true that examination of this agent should be confined to re-direct examination on the subject covered by the cross-examination, but the order of examination and the terms thereof are largely in the discretion of the court, and we find no prejudice in the course pursued in this case.

For these reasons, the judgment of the Court of Common Pleas of Franklin County is reversed, and the cause remanded for further proceedings according to law.

O'CONNELL, J, concurs.
LONG, J, dissents.

### DISSENTING OPINION

By LONG, J.

I can not agree with the conclusion reached by my colleagues in the above case. In my opinion, the rule of liability of Municipal Corporations for maintaining hazards close to the sidewalk, causing injuries to persons using the sidewalk in the ordinary manner, does not apply to this case. Even in such cases, a person knowing of the existence of the hazard, having passed the dangerous condition many times before, which person would be safe if he remained on the walk, and yet, digresses by stepping off the walk, in my opinion is guilty of negligence. Nor do I feel that the liability of a landlord in the care of his premises to protect his tenants, is an inaccurate statement of the law.

My sole ground of dissent is that the plaintiff was guilty of contributory negligence as a matter of law. There is no dispute that she was familiar with the location and condition of the lid of the refuse container, which caused the injuries; for weeks she had used the walk in question, both during the day and night. It must be remembered that there were safe ways to reach the garage and to return therefrom, including the three foot cement walk from which plaintiff stepped to cause her injuries. Complaint of the proximity of the lid of the container cannot be used to excuse plaintiff. The lid had to be close to the walk to serve its purpose; it was placed so that a tenant could deposit his refuse while standing on the walk. Plaintiff knew this, because she had the same accommodations in connection with her tenancy. Further, she

**536**

knew, or was bound to know, from the contour of the covering that if she stepped on it, she might fall.

On the sole ground that plaintiff was guilty of contributory negligence, I must disagree with my colleagues.